**In re Preston L. HALE, Shelby M. Hale, Chapter 7 Debtors.**

**Citibank (South Dakota), N.A., Plaintiff,**

v.

**Shelby Hale, Defendant.**

**Monogram Credit Card Bank Of Georgia, Plaintiff,**

v.

**Preston Hale, Shelby Hale, Defendants.**

**Bankruptcy No. 00–34015–T. Adversary Nos. 00–3140–T, 00–3141–T.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 26, 2001.

---

### *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Chief Judge.

A consolidated trial of the above adversary proceedings was held March 19, 2001. At the conclusion of trial, the court took the matter under advisement.

For reasons stated in this opinion, the court will grant judgment for the plaintiffs

and except their indebtedness from the debtors' chapter 7 discharges.

### Findings of Fact.

Debtors filed a joint chapter 7 petition on July 19, 2000. In Schedule F of their petition, debtors listed twenty-two unsecured creditors and total unsecured debt of $27,254.00. Twenty-one of these debts were credit cards; these included the plaintiffs in the above adversary proceedings, Citibank (South Dakota) N.A. and Monogram Credit Card Bank of Georgia (Home Depot).

*Citibank.* This account was in the name of debtor Shelby M. Hale. She made various charges for merchandise and other services from April 24, 2000, to May 7, 2001, which resulted in a present balance due Citibank of $3,839.34.

*Monogram.* This was a joint account of Mr. and Mrs. Hale that represented purchases from Home Depot. From April 24, 2000, until May 11, 2000, debtors charged eight purchases to this account, which resulted in a present balance owed of $4,550.45. The Home Depot purchases consisted of various building materials and appliances which debtors used to make improvements to their personal residence.

Mrs. Hale was unemployed from mid to late 1999 until September 2000. Mr. Hale was employed during 1999 and 2000 (and previously) at Richmond Corrugated Box Company. At the time debtors filed their bankruptcy petition Mr. Hale's take home pay was $1,692.34, and the family expenses were $2,195.15. Debtors have a one year old son.

Because of their financial difficulties, debtors consulted their present bankruptcy attorney on April 20, 2000, and paid the attorney a deposit of $200.00. After this meeting, debtors decided not to file bankruptcy. Subsequently, in July Mr. Hale received a judgment garnishment against his wages. Consequently, debtors returned to see their attorney, and they filed this bankruptcy case.

### Positions of Parties.

Plaintiffs ask the court to except these debts from the debtors' discharges as having been fraudulently incurred. *See* 11 U.S.C. § 523(a)(2)(A).

Both debtors stated at trial that they did not intend to defraud the plaintiffs. They thought they could eventually resolve their financial problems. They were driven into bankruptcy by Mr. Hale's garnishment. Essentially their only plausible defense, from testimony of Mrs. Hale, was a hope that Mrs. Hale would be able to earn daycare income by keeping children in their home. She explained that the Home Depot purchases were for the purpose of fixing up the house and making it suitable for a daycare business. However, this business did not materialize, she said, because by the time the work to the house was completed there were no children needing the service.

### Discussion and Conclusions of Law.

Plaintiffs have the burden to prove the debtors' credit card purchases were debts incurred with intent to defraud and thus excepted from debtors' chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(2)(A). The elements to be proven are as follows:

(1) that the debtor made misrepresentations or committed other fraud;

(2) that at the time the debtor knew the conduct was fraudulent;

(3) that the debtor's conduct was with the *intention and purpose* of deceiving or defrauding the creditor;

(4) that the creditor relied on the debtor's representations or other fraud; and

(5) that the creditor sustained loss and damage as the proximate result of the representations of fraud.

*American Express Centurion Bank v. Choi (In re Choi)*, 203 B.R. 397, 398 (Bankr.E.D.Va.1996) (quoting *Western Union Corp. v. Ketaner (In re Ketaner)*, 154 B.R. 459, 464–65 (Bankr.E.D.Va.1992)).

The parties have stipulated the amount of damages and that plaintiffs relied upon debtors' implied representation that they intended to pay for their purchases. Plaintiffs undoubtedly sustained losses as a result of debtors' implied representations. The only issues for decision are the first three elements set forth above, which may be combined for discussion.

■ In *Choi*, this court discussed the various approaches in credit card cases on the question of a debtor's fraudulent intent and knowledge and adopted a good faith or reasonable person approach to the intent issue. This approach means that even though a debtor may have subjectively intended to pay a credit card charge, the court should apply "a good faith type of test and consider[ ] whether a debtor was hopelessly insolvent and therefore *should* have known that he or she would be unable to pay" a charge when it comes due. *In re Choi*, 203 B.R. at 399.

■ Of course, each case must be considered on its own facts, and the credibility and plausibility of a debtor's testimony is a critical factor.

■ The facts of both of these adversary proceedings are similar. Debtors made substantial credit card charges commencing on April 24, 2000, and continuing into early May. During this period, only Mr. Hale was employed; Mrs. Hale was unemployed until September 2000. The debtors' petition reveals that their average monthly living expenses exceeded their income by $500.00. They made up some of the shortfall in living expenses with help from their parents.

Although debtors had no ability at this time to pay any credit card debt, they incurred charges in excess of $8,000.00 in addition to their other unsecured debt of approximately $15,000.00. According to testimony of Mrs. Hale, she hoped to begin a childcare business in debtors' home, and this was the basis for the Home Depot charges of $4,550.00. From debtor's testimony the court must conclude that there was no realistic prospect for Mrs. Hale to earn income in an amount that would significantly improve the debtors' finances, particularly in light of their total debt.

The debtors obviously realized this. On April 20, 2000, they met with their attorney to discuss the possibility of filing bankruptcy. Debtors decided not to file bankruptcy at that time; yet almost immediately afterward and over a period of approximately two weeks they made the credit card charges at issue here.

The court is sympathetic with the debtors' difficult situation. It seems probable that they wanted to pay these charges and that they may have believed they ultimately could pay. Nevertheless, they were well aware that they could not pay when they made the charges and must have known that payment was unlikely.

In summary, plaintiffs have presented a strong circumstantial case. Debtors were hopelessly insolvent, Mrs. Hale was unemployed, and they could not even pay their monthly living expenses. Debtors have been unable to furnish any rational basis to support their stated intent to pay their debts. Perhaps most damaging of all the circumstances, debtors incurred the

charges just after consulting with their bankruptcy attorney.[1]

Because debtors have offered virtually nothing to refute plaintiffs' evidence that their financial circumstances presented a situation of hopeless inability to pay, of which they must have been aware, the credit card charges at issue here will be excepted from discharge under 11 U.S.C. § 523(a)(2)(A). *See In re Choi,* 203 B.R. at 398–399.

Judgment will be entered for the plaintiffs excepting the credit card charges from the discharges of Mrs. Hale in Adversary Proceeding Number 00–3140 and both debtors in Adversary Proceeding Number 00–3141.

Separate orders will be entered.

1. The court's analysis under these circumstances is somewhat comparable to that in the "reckless disregard" cases in which a fraudulent intent may be based upon a finding that a debtor made representations based upon a "reckless disregard for truth." *Visotsky v. Woolley (In re Woolley),* 145 B.R. 830, 834–35 (Bankr.E.D.Va.1991); *In re Choi,* 203 B.R. at 399.